UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Christian Castro,

        Plaintiff,

  v.

Commissioner of Social Security,

        Defendant.

**Decision and Order**

17-CV-1113 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 18.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Here, plaintiff advances several arguments about how the ALJ developed and interpreted the record and its information about his carpal tunnel syndrome, mental health, and sleep apnea. According to plaintiff,

> The ALJ failed to adopt opinion findings; opinions did not consider all of Plaintiff's conditions; consultative examiner's exam was stale; and therefore, this created and widened an evidentiary gap of record, and improperly caused the ALJ to rely on her own lay opinion in findings. The ALJ improperly rejected more restrictive medical opinions from Dr. Paterson, EO and Healthworks providers, but nonetheless, her rejection widened an evidentiary gap in the RFC findings and this is improper. (Tr. 16-32, 220-250, 293-327). The ALJ failed to order an updated physical consultative exams post surgeries, mental consultative exam, or obtain treating assessments since his had additional conditions and/or her conditions progressed. (Tr. 1-401). The ALJ further failed to obtain records from Lakeshore related to mental health ("MH") treatment, surgery treating records, and the IME evaluations from April or May 2016, referenced but not included in the record. (Tr. 1-401, 322-327, 365-373, 381-382, 329-393). Despite this, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a light work with exceptions. (Tr. 20). 20 CFR §404.1567(b). The ALJ's RFC findings are unsupported by substantial evidence. This is harmful to Plaintiff and frustrates meaningful court review.

(Dkt. No. 10-1 at 14; *see also* Dkt. No. 19 at 3–4.) The Commissioner responds that "the evidence of record supports the ALJ's finding that Plaintiff could perform frequent, but not continuous or repetitive, manipulation bilaterally (Tr. 20-26). As discussed above, in December 2014, Dr. Siddiqui found that Plaintiff had full strength in his arms and hands and grip strength and intact hand and finger dexterity (Tr. 253-54). In June 2015, Dr. Paterson found that Plaintiff had full ranges of motion in his elbows, wrists, and fingers; full strength in his wrists; and no atrophy in his hands, and made the same or similar findings each month from August to October 2015 and again in February, April, and May 2016 (Tr. 301, 306, 308, 312, 319, 323, 326)." (Dkt. No. 18-1 at 19.) The Commissioner notes that the ALJ found the possibility of medication misuse, which might have increased any pain and limitations that plaintiff experienced. (*Id.* at 21.) The Commissioner also rejects any arguments about developing the record; in the Commissioner's view, the ALJ had

4

sufficient information on record to assess plaintiff's RFC, and plaintiff's attorney expressed no objections with the record at the hearing.

The Commissioner has the better argument here because the RFC reflects a weighing of varying medical opinions that had some information in common. The Commissioner obtained the records that plaintiff disclosed in his initial application. [191–92.] The record contains notes of plaintiff's visits to Health Works WNY in 2014 for a workers' compensation injury. By the last visit of July 17, 2014, plaintiff was assessed as having a weight restriction of 10 pounds; a restriction against the use of ladders and against overhead work; and no restrictions for bending, twisting, stooping, standing, or walking. [233.] The ALJ assigned these notes little weight because the restrictions were too precautionary but did not disagree with the findings of no restrictions on mobility. The consultative physical examination of December 22, 2014 by Dr. Abrar Siddiqui led to a medical source statement with no limitations. [258.] The ALJ gave this medical source statement some weight but not controlling weight because of the carpal tunnel surgery that plaintiff had a few months later. [28.] *Cf. Prince v. Astrue*, No. 10-CV-1215 (DRH), 2012 WL 12883639, at *15 (N.D.N.Y. May 24, 2012) (affirming a "middle ground" between opinions where "the ALJ was forced to make credibility determinations among the three physicians"). In a similar way, an examination by Dr. Gregory Chiaramonte on May 29, 2014 would not have acknowledged the surgery that would come later but did find plaintiff "stable and unchanged." [263.] A sleep report from June 9, 2015 found significant sleep apnea but suggested ways to keep the condition under control. [269.] In fact, improvement did occur by September 1, 2015. [290.] *Cf. Cirino v. Apfel*, 34 F. Supp. 2d 861, 864 (E.D.N.Y. 1999) (RFC of light work affirmed where treatment improved sleep apnea). A post-surgery EMG found evidence of neuropathy but "no evidence of acute denervation." [280.] *Cf. Germain v. Astrue*, No. 1:11-CV-0879 RFT, 2013 WL 587369, at *4

(N.D.N.Y. Feb. 12, 2013) ("At subsequent examinations conducted by various doctors, Plaintiff consistently displayed full strength and full range of motion in her wrists."). In a physical examination by Excelsior Orthopedics on June 12, 2015, plaintiff had full strength and full range of motion in both arms. [304.] *Cf. Papoi v. Astrue*, No. 06-CV-445, 2008 WL 2622934, at *5 (W.D.N.Y. June 27, 2008) (Commissioner affirmed on RFC of sedentary/light work where plaintiff had carpal tunnel syndrome but "still had full range of motion of his cervical spine, and upper and lower bilateral extremities"). By January 6, 2016, plaintiff was advised "to discuss with his attorney [a] plan for return to gainful employment as he is nearing 1 year from date of surgery." [297.] No one medical opinion in the record received controlling weight, but the regulations (20 C.F.R. §§ 404.1527, 416.967) do not "mandate assignment of some unvarying weight to every report in every case. The ALJ is *not* required automatically to give controlling weight to *any* 'treating' doctor's report, denominated as such. In some cases 'controlling weight' may be assigned *if* the report meets the specified qualifications, and is not inconsistent with other substantial evidence." *Rivera v. Sec'y of Health & Human Servs.*, 986 F.2d 1407 (1st Cir. 1993).

Overall, the record shows that plaintiff had symptoms such as pain, numbness, and depression. [*E.g.*, 336.] The ALJ acknowledged plaintiff's symptoms in her determination and found plaintiff's carpal tunnel syndrome to be a severe impairment. The record showed also, however, that plaintiff had strength, range of motion, and recovery from surgery that fell between the opinions of significant limitation and no limitation at all. The RFC of light work with conditions properly captured a moderate weighing of the various opinions.

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 18) and denies plaintiff's cross-motion (Dkt. No. 10).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                     __/s Hugh B. Scott_____
                                                     Hon. Hugh B. Scott
                                                     United States Magistrate Judge

DATED: June 14, 2019